UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNICORN ENERGY AG,<br><br>Plaintiff,<br><br>v.<br><br>TESLA INC.,<br><br>Defendant. | Case No. 21-cv-07476-BLF (SVK)<br><br>**ORDER ON TESLA'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS**<br><br>Re: Dkt. No. 176 |

In this patent infringement case, Plaintiff Unicorn Energy AG ("Unicorn") alleges that certain products of Defendant Tesla Inc. ("Tesla") infringe a Unicorn patent that relates to energy storing components that communicate with and transfer energy to other energy storing components. *See generally* Dkt. 108 at 2. Now before the Court is Tesla's motion to strike Unicorn's infringement contentions, which Judge Freeman referred to the undersigned. Dkt. 176, 178. This Court held a hearing on Tesla's motion on July 11, 2023, which included a technical tutorial. After considering the Parties' arguments in the briefing and at the hearing, the relevant law, and the case file, the Court **DENIES** Tesla's motion to strike for the reasons discussed below.

**I.    BACKGROUND**

Unicorn originally filed this case on October 26, 2020 in the Eastern District of Texas, asserting infringement of U.S. Patent No. 10,008,869. Dkt. 1. On September 3, 2021, that court transferred the case to this District. Dkt. 80.

Unicorn served infringement contentions pursuant to this District's Patent Local Rule 3-1 on May 10, 2022. *See* Dkt. 176-1 ¶¶ 14-15, Dkt. 177-5; Dkt. 177-6. Subsequently, Tesla served invalidity contentions, the Court held claim construction proceedings, and the Parties engaged in discovery. *See generally* Dkt. 108, 115, 118.

From shortly after service of Unicorn's infringement contentions until at least June 2022,

the Parties had several met and confer communications about the sufficiency of Unicorn's infringement contentions. *See* Dkt. 176-1 ¶¶ 5 and 7; Dkt. 176-4; Dkt. 176-6.

Beginning in August 2022, the Parties engaged in claim construction proceedings, culminating in a hearing on October 14, 2022 and issuance of a claim construction order on January 19, 2023. Dkt. 169.

Following issuance of the claim construction order, the Parties resumed meet and confer discussions about the sufficiency of Unicorn's infringement contentions from approximately February to May 2023. *See* Dkt. 176-1 ¶¶ 8-13, 17; Dkt. 176-7 to 176-12; Dkt. 177-8.

On May 16, 2023, Tesla filed the present motion to strike Unicorn's infringement contentions. Dkt. 176 (motion); *see also* Dkt. 185 (opposition), Dkt. 188 (reply). Judge Freeman referred the motion to strike to the undersigned. Dkt. 178.

Under the present case schedule,[1] fact discovery will close on September 14, 2023, opening expert reports are due on October 17, 2013, rebuttal expert reports are due November 17, 2023, and expert discovery closes on December 20, 2023. Dkt. 192, 194.

## II.     LEGAL STANDARD

This District's Patent Local Rules aim to "make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Sage Electrochromics Inc. v. View Inc.*, No. C-12-06441-JST (DMR), 2013 WL 4777164, at *1 (N.D. Cal. Sep. 6, 2013) (citation omitted). The purpose of the infringement and invalidity contentions required under the Patent Local Rules is to "require the parties to crystallize their theories of the case early in the litigation" in order to "further the goal of full, timely discovery and provide all parties with adequate notice of an information with which to litigate their claims." *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 3640694, at *1 (June 11, 2015) (citations omitted). "The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *Id.* (citation omitted).

---

[1] At the time the motion to strike was filed, the fact discovery cutoff was August 3, 2023. The Parties have since stipulated to a modest extension of this deadline. *See* Dkt. 192, 194.

1  Under Patent Local Rule 3-1, the party alleging patent infringement is required to serve a "Disclosure of Asserted Claims and Infringement Contentions" not later than 14 days after the Initial Case Management Conference. Patent L.R. 3-1. Among other things, the infringement contentions must identify each claim of each patent in suit that is allegedly infringed and, for each asserted claim, "each accused apparatus, product, device, process, method, act, or other instrumentality ('Accused Instrumentality') of each opposing party of which the party is aware." Patent L.R. 3-1(a), (b). "This identification shall be as specific as possible" and "[e]ach product, device, and apparatus shall be identified by name or model number, if known." Patent L.R. 3-1(b). The infringement contentions must also include "[a] chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1(c).

The infringement contentions are a "discovery device" that "takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Sage Electrochromics*, 2013 WL 4777164, at *1 (citations omitted). "Patent Local Rule 3–1 mandates that a plaintiff's infringement contentions must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement and to raise a reasonable inference that all accused products infringe." *Id.* (internal quotation marks and citations omitted). The rule does not "require the disclosure of specific evidence [or] require a plaintiff to prove its infringement case … [b]ut to the extent appropriate information is reasonably available to it, a patentee must nevertheless disclose the elements in each accused instrumentality that it contends practices each and every limitation of each asserted claim." *Id.* at *2 (citation omitted).

Following the plaintiff's service of infringement contentions, the accused infringer must serve invalidity contentions, and the parties subsequently engage in claim construction proceedings. Patent L.R. 3-3, 4-1.

The Patent Local Rules address amendments to the infringement contentions as follows:

> Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Non-

> exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include:
>
> > (a) A claim construction by the Court different from that proposed by the party seeking amendment;
> >
> > (b) Recent discovery of material, prior art despite earlier diligent search; and
> >
> > (c) Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.
>
> The duty to supplement discovery responses does not excuse the need to obtain leave of court to amend contentions.

Patent L.R. 3-6.

## III. DISCUSSION

Tesla's arguments in support of its motion to strike Unicorn's infringement contentions fall into two general categories: (1) Tesla argues that the infringement contentions are deficient because they are largely based not on the Accused Products but instead on a patent application Tesla filed in 2016, which the Parties refer to as "Ozbek"; and (2) Tesla argues that Unicorn's infringement theories are inadequate for the "gateway," "switch," "communication interface," and "transport interface" limitations in the Asserted Claims of the '869 Patent. See Dkt. 176 at 5-10. Although in this Court's experience, motions to strike contentions generally make an alternative request that the Court order amendment of the contentions, Tesla does not ask that Unicorn be allowed to amend its contentions. *Id.*

As to the first argument, Tesla asserts that the Ozbek application "uses high-level diagrams to illustrate concepts relevant to the application" but "[i]t is not an architecture diagram for the Accused Products." *Id.* at 5. Tesla states that at the time Unicorn served its infringement contentions, Tesla had already produced more detailed technical documents such as schematics. *Id.* at 5-6. Then, in a letter dated March 31, 2023, during the Parties' second round of meet and confer over the infringement contentions, Unicorn cited the earlier-produced technical documents in support of its identification of specific Tesla part numbers that are alleged to infringe. *Id.*; *see also* Dkt. 176-1 at ¶ 12; Dkt. 177-4 (the "3/31/23 letter"). Tesla argues that Unicorn's

infringement contentions thus improperly rely on the general disclosure of Ozbek rather than the "more developed theories identifying specific accused components in technical documents" reflected in the 3/31/23 letter. Dkt. 176 at 5-6. Relatedly, Tesla argues that Unicorn's infringement contentions as to certain limitations of the Asserted Claims rely on the "main DC/DC" and "additional DC/DC" in a figure of Ozbek without explaining which of the several DC/DC converters in the accused Megapack and Powerwall products correspond to these components in Ozbek. *Id.* at 7.

Tesla's second argument, which concerns the adequacy of the infringement contentions as to certain limitations of the Asserted Claims, faults Unicorn for inadequately identifying which DC/DC converter is the claimed "gateway" in the Accused Products and for relying on a single DC/DC converter to satisfy the "gateway," "switch," and "direct current converter" limitations of the asserted patent claims. Dkt. 176 at 6-8. Tesla also argues that Unicorn fails to identify an infringement theory for the "transport interface" and "communication interface" limitations in the asserted claims. *Id.* at 8-10.

Unicorn defends its use of Ozbek and points to Tesla product information, also cited in the contentions, as corroborating Ozbek. Dkt. 185 at 4; Dkt. 185-1 ¶ 5; Dkt. 186-4 at 19-21; 23-30. Unicorn further maintains that its infringement contentions as to the "gateway," "switch," "transport interface" and "communication interface" limitations are adequate, although it asks the Court to allow it to amend any contentions found to be deficient rather than striking them. Dkt. 185 at 10.

At the hearing, the Court expressed concern about whether Tesla's motion to strike is timely. Unicorn served its infringement contentions on May 10, 2022, but Tesla waited more than a year to formally challenge them by filing the present motion. It is significant that by the time Tesla filed the motion to strike, claim construction had been completed, fact discovery was nearing an end, and expert discovery would soon commence.

In explaining its delay, Tesla points to the fact that it raised issues regarding the sufficiency of the contentions at numerous points during discovery. *See* Dkt. 176 at 3-4 and evidence cited therein. According to Tesla, on several occasions Unicorn indicated that it would

5

amend its contentions once it received more documents from Tesla, but ultimately Unicorn did not do so. Tesla also believed that Unicorn would have a right to amend its contentions after claim construction, so Tesla thought an earlier motion would be unnecessary or inappropriate.

Tesla has not demonstrated that its lengthy delay in formally challenging Unicorn's infringement contentions was justified. To be sure, Unicorn suggested it would amend its contentions, but its lack of action did not impede Tesla's defense. To the contrary, despite Tesla's complaint to Unicorn in mid-2022 that it would be prejudiced if forced to prepare its invalidity contentions and participate in claim construction proceedings based on Unicorn's allegedly insufficient infringement contentions (*see* Dkt. 176-4, 176-6), Tesla proceeded with invalidity contentions and claim construction in 2022, long before raising any formal objection to the infringement contentions with the Court. If the infringement contentions were in fact so deficient that Tesla could neither draft invalidity contentions nor work through the claims construction process with Unicorn as required by this Court's Local Rules, then Tesla should have moved to strike or amend the contentions at that time. Moreover, Tesla was not justified in delaying its motion based on a belief that Unicorn would have a right to amend its contentions following claim construction. Although Patent Local Rule 3-6 cites "[a] claim construction by the Court different from that proposed by the party seeking amendment" as an example of a circumstance that *may* justify a court order allowing amendment, there is no right to amend following claim construction. Indeed, Tesla's argument would favor delaying any challenge to contentions until after claim construction when in fact contentions are intended to facilitate claim construction as well as discovery.

From Tesla's arguments in the briefs and at the hearing, it appears that the motion to strike is, at least in large part, an effort to avoid disputes in later stages of the case, such as disputes about whether Unicorn's forthcoming expert opinions on infringement are adequately supported by its infringement contentions. It is true that infringement contentions bear an important role in determining the proper scope of expert opinions to be offered by the patent holder. "Given the purpose behind the patent local rules' disclosure requirements, a party may not use an expert report to introduce new infringement theories [or] new infringing instrumentalities." *Verinata*

6

1  *Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4100638, at *3 (N.D. Cal. Aug. 20, 2014) (citation omitted).  However, disputes over whether an expert's opinions are properly grounded in the infringement contentions are normally, and more suitably, resolved once experts have actually served their reports.  By filing a motion to strike the infringement contentions now, Tesla essentially asks the Court to constrict the scope of Unicorn's expert reports in advance, but Tesla offers no legal authority for this approach.  Nor has Tesla explained to the Court's satisfaction how an order striking Unicorn's infringement contentions would impact the case at this late stage, when claim construction has already occurred and fact discovery is coming to a close.  At the hearing, the Court expressed its concern that Tesla's motion, directed to the only two independent claims in the patent-in-suit, would inappropriately have the impact of a dispositive motion.

Finally, another problem arising from the timing of Tesla's motion to strike the infringement contentions is that some of Tesla's arguments relate at least in part to issues of claim construction, non-infringement, and/or invalidity that are not before this Court at the present time and are not properly resolved on this motion.  *See, e.g.,* Dkt. 176 at 6 (Tesla argues that Unicorn's theory that the same DC/DC converter can satisfy multiple different claims limitations is "incoherent"); *id.* at 9 (arguing that portions of Powerwall identified in infringement contentions do not satisfy claim element requiring a "transport interface for transporting the electrical energy to the further energy storing component" because they are "wired directly to a circuit breaker in the home's electrical panel—and thus *not* to other Powerwalls").

At the same time the Court rejects Tesla's arguments that Unicorn's infringement contentions are inadequate and should be stricken, the Court also concludes that it would not be appropriate to now allow Unicorn an opportunity to amend its contentions to add additional detail.  Unicorn never moved to amend its contentions despite numerous meet and confer communications that put it on notice of Tesla's objections to the sufficiency of the contentions.  Unicorn at times indicated it might amend its contentions, including stating in the 3/31/23 letter that it "reserve[d] the right to seek leave to formally amend [its] contentions both to include newly produced information and to formalize the above clarifications." Dkt. 177-5.  Apparently, Unicorn

ultimately decided to instead stand on the adequacy of its existing contentions. Although Unicorn's opposition to Tesla's motion to strike made a contingent request for leave to amend its contentions, it has fallen far short of making a "timely showing of good cause" as required under Patent Local Rule 3-6.

For the reasons discussed, under the circumstances of this case and in light of the purpose of the Patent Local Rules, the Court concludes that Tesla's motion to strike Unicorn's infringement contentions is untimely and therefore **DENIES** the motion to strike.

**SO ORDERED.**

Dated: July 19, 2023

SUSAN VAN KEULEN
United States Magistrate Judge